SCANLAN v. KAHN et al.

(Supreme Court, Appellate Division, Second Department. April 18, 1899.)

MASTER AND SERVANT—NEGLIGENCE—DETECTION OF DEFECTS.

A die to which was attributed an explosion injuring plaintiff, an employé of defendant, was first used at the time of the accident, and had been placed in the machine by plaintiff's brother, an experienced workman. He had never known of such an explosion before, and detected no defects in the die, except that it was somewhat "full" in the face. There was evidence that explosions are likely to occur where convex dies are used, and that it was "known to the art" that, where hot metal is to be forced through a die, explosions can be avoided by making the die slightly concave, so that air cannot collect in it; and an expert testified that the die in question was sufficiently convex to cause the explosion, though the convexity could only be discerned by the application of a straightedge, and there was no proof that so slight a convexity had ever caused an explosion before. *Held*, that negligence could not be imputed to defendant in not detecting the defect.

Appeal from trial term, Kings county.

Action by John Scanlan against Emanuel S. Kahn and others. From a judgment for plaintiff, and from an order denying a new trial, defendants appeal. Reversed.

Argued before GOODRICH, P. J., and CULLEN, BARTLETT, HATCH, and WOODWARD, JJ.

L. Sidney Carrere, for appellants.
Charles J. Patterson, for respondent.

WILLARD BARTLETT, J. The accident which befel the plaintiff in this case was of a most extraordinary character. He was at work at a machine which was being operated for the manufacture of lead wire, when an explosion occurred which forced more than 11 feet of lead wire into his arm at the wrist, and upward, under the skin, into a coil just below the elbow. He attributed the explosion, and consequent injury, to the negligence of his employers in furnishing the machine with a convex metal die, through which the lead was forced, instead of a die with a concave surface; and a jury has awarded him damages against the appellants in the sum of $4,000. "The master must provide for the safety of his servant, as far as can reasonably be expected under the circumstances; but he is not obliged to take more care of his servant than a prudent man would be expected to take of himself. * * * The measure of care which a master must take to avoid responsibility for injury to his servant is that which a person of ordinary prudence and caution would use, if his own interests were to be affected and the whole risk were his own." Berns v. Coal Co., 27 W. Va. 285, 300. The standard which the law has set up, whereby to determine whether due care has been exercised by the master to furnish safe and suitable machinery and appliances for the use of the servant, is the conduct of a man of ordinary prudence, competent and qualified to carry on the business he has undertaken, acquainted with its known dangers, and no less observant and diligent to protect his employés against those dangers than he would be to protect himself. Applying this rule to the facts of the case at bar, I am unable to dis-

cover any sufficient basis for imputing negligence to the employers of the plaintiff. The die to which the explosion is attributed was used for the first time on the occasion of the accident. It was placed in the machine by the brother of the plaintiff, a workman whose experience in wire-making extended over a number of years. He had never known such an explosion to occur before, and it is to be inferred that he detected nothing defective or unsuitable in the construction of the die, or he would not have put it into the machine upon which the plaintiff was to work. Indeed, when he examined it after the explosion, he says: "I looked the die all over, and the die seemed to be all right. It was kind of full on the face. The die was full in the face of the die. That was the only thing I could see was the matter with the die." The convexity of which complaint is now made was discoverable only by the application of a straightedge, being so slight as not otherwise to be appreciable to the eye. The contention in behalf of the plaintiff is that this convexity permitted the inclusion of air between the surface of the die and the molten lead, which was forced up towards it, in such a manner as to cause an explosion by reason of the heat and compression to which the air was subjected; and that the liability of such a convex die to cause such an explosion was so well known in pursuits in which metal dies are employed as to charge the appellants with such knowledge, and render them responsible for supplying a die of this shape to be employed by one of their servants, who was injured by using it. It is true that there was evidence to the effect that explosions are likely to occur in wire-making machines in which convex dies are used, and that before the accident to the plaintiff it was "known to the art" that, where hot metal is to be forced through a die, explosions might be avoided by making the die slightly concave, so that the air could not collect in it. An expert witness also expressed the opinion that the surface of the die produced on the trial as that which was in use when the plaintiff was injured was sufficiently convex to bring about the explosion which actually occurred. There is no proof, however, that so slight a convexity ever before caused such an explosion or any explosion at all. The die exhibited to us upon this appeal presents to the unassisted vision what appears to be an absolutely flat and smooth surface. If it had been proved that it was known either to the appellants or among wiremakers generally, prior to the injury to the plaintiff, that dies of such extremely slight convexity were capable of causing violent explosions, the defendants might be held liable on the ground that they had failed to exercise due care to furnish safe machinery for the use of those in their employ; but, in the absence of any evidence of this kind, the employers were not chargeable with negligence. The action of the plaintiff's brother in placing the die in the machine for the plaintiff's use, and his subsequent inability to discover anything which he deemed seriously faulty in its construction, go very far to confirm our conclusion that the proof does not show the defendants to have been in fault. If the die was improperly constructed, and due care and inspection on their part would have revealed that fact, the defendants would not be excused merely because they were ignorant of the defect (Benzing v. Steinway, 101 N. Y. 547, 5 N. E. 449); but without any

experience of their own or others to warn them that an apparently flat die might really be convex, and therefore dangerous, I do not see how negligence can be imputed to them for regarding it as perfectly safe.

For these reasons I think the judgment should be reversed.

Judgment and order reversed, and new trial granted, costs to abide the event. All concur.